**Donald W. FINCH, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 17, 1997.

Decided April 10, 1997.

Andrew F. Erba, Philadelphia, for Petitioner.

Judith M. Gilroy, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for Respondent.

Before PELLEGRINI and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

LEADBETTER, Judge.

■ Donald Finch (Claimant) appeals an order of the Unemployment Compensation Board of Review which affirmed the decision

of the referee to deny Claimant's petition for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).[1] We reverse.

Claimant was employed as an emergency medical technician (EMT) by NuCare Systems, Inc. (Employer) from August 15, 1995, through April 11, 1996. As an EMT, Claimant was required to operate Employer's ambulance. On April 11, 1996, Claimant was involved in an intersectional motor vehicle accident while en route to a routine patient pickup. The accident occurred as follows. Claimant stopped at the intersection as required, looked in both directions and then proceeded to cross the intersection. Once in the intersection, Claimant observed a vehicle approaching the intersection from his right. Claimant did not stop, however, because he assumed that the other vehicle had a stop sign. However, the other vehicle did not have a stop sign as believed and it entered the intersection and hit Claimant's vehicle.

Claimant reported the accident to Employer and was immediately suspended for gross negligence. On April 22, 1996, he was discharged. Claimant subsequently filed for unemployment compensation benefits which were denied by the job center pursuant to Section 402(e). Claimant appealed the job center's determination and a hearing before a referee followed, at which both Claimant and Employer's witnesses testified. The referee affirmed the denial of benefits, concluding that, as an EMT, Claimant is held to a higher standard of care and, therefore, his failure to exercise good judgment constituted willful misconduct rather than ordinary negligence. Claimant subsequently appealed to the Board, which affirmed on the basis that Claimant was at fault in the accident and lacked good cause for his actions. The instant appeal followed.

▪ On appeal, Claimant first contends that the Board erred in concluding that a single motor vehicle accident constitutes willful misconduct.[2] In support of this argument, Claimant cites *Coulter v. Unemployment Compensation Board of Review*, 16 Pa.Cmwlth. 462, 332 A.2d 876 (1975) wherein this Court stated as follows:

A single dereliction or a minor and casual act of negligence or carelessness does not constitute willful misconduct. Rather, it is a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer which will support the conclusion that an employe is guilty of willful misconduct.

*Id.* at 879. Although the appellate courts in Pennsylvania have applied the *Coulter* standard in determining whether an employee's involvement in a motor vehicle accident rises to the level of willful misconduct,[3] this standard was rejected by the Pennsylvania Supreme Court in *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373,

1. Section 402(e) provides, in pertinent part, that an employee shall not be eligible for benefits for any week in which "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." ·

"Willful misconduct" has been defined as:
[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer. (Emphasis omitted). *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 378, 625 A.2d 622, 625 (1993), quoting *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 620, 383 A.2d 533, 535 (1978).

The employer bears the burden of proving willful misconduct. *Holly v. Unemployment Compensation Board of Review*, 151 Pa.Cmwlth. 450, 617 A.2d 80, 82 n. 5 (1992).

2. Based on the issues raised in the instant appeal, our scope of review is limited to a determination of whether the Board committed an error of law. *Holly v. Unemployment Compensation Board of Review*, 151 Pa.Cmwlth. 450, 617 A.2d 80, 82 n. 5 (1992), *alloc. denied*, 534 Pa. 643, 626 A.2d 1160 (1993). Whether specific conduct rises to the level of willful misconduct is a question of law subject to our review. *Id.*

3. See generally *Kneisler v. Unemployment Compensation Board of Review*, 52 Pa.Cmwlth. 70, 418 A.2d 774 (1980); *Drake v. Unemployment Compensation Board of Review*, 80 Pa.Cmwlth. 34, 470 A.2d 1115 (1984).

625 A.2d 622 (1993). There, the Court stated that an employee's negligence constitutes willful misconduct only if:

> [I]t is of 'such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'

*Id.* at 378, 625 A.2d at 625 (quoting *Coleman v. Unemployment Compensation Board of Review,* 47 Pa.Cmwlth. 113, 407 A.2d 130, 131–32 (1979)).

The Court further opined that "an employer cannot demonstrate willful misconduct by 'merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature.'" *Id.* (quoting *Bucher v. Unemployment Compensation Board of Review,* 76 Pa.Cmwlth. 282, 463 A.2d 1241, 1243 (1983)). Finally, the Supreme Court specifically rejected the *Coulter* standard on the basis that it improperly equated negligence and willful misconduct, holding that "mere 'negligence' does not rise to the level of 'willful misconduct' without the additional element of an *intentional* disregard of the employer's interests." *Id.* at 380 n. 3, 625 A.2d at 626 n. 3. (Emphasis in original).[4]

Thus, we must determine whether the facts, as found by the Board, demonstrate that Claimant intentionally or deliberately disregarded Employer's interest or his duties to Employer. A review of the Board's findings reveals that they do not support a finding that Claimant acted with an intentional disregard for Employer's interest or his duties. To the contrary, the Board's findings indicate that Claimant acted carefully when he approached the intersection, as he stopped before entering it and looked in both directions. The Board also found that Claimant proceeded without yielding the right of way because he mistakenly believed that the other vehicle had a stop sign. Thus, while these findings support the conclusion that Claimant acted negligently, they do not support the conclusion that Claimant acted with an *intentional* disregard for Employer's interest or his duties.

Nonetheless, the Board contends that, although Claimant did not intentionally cause the accident, Claimant's actions were deliberate in that he intentionally proceeded into the path of another vehicle without yielding the right of way. The Board also argues that Claimant failed to follow the rules of the road[5] and that such conduct should be treated in the same manner as if a violation of a work rule had occurred. We disagree.

First, the Board misconstrues the intent which is at issue. The relevant inquiry is not whether Claimant intended to enter the intersection without yielding the right of way, but whether his decision to do so was an intentional or deliberate disregard of Employer's interest or his duties. As already stated, the facts do not support this conclusion. A review of the Board's findings, as well as the record, reveals only that Claimant made a mistake.[6]

Second, we decline to adopt the view that a violation of the rules of the road is equivalent to a deliberate violation of a known work rule. Not only is that view unsupported by our case law, but it improperly equates negligent conduct, which is generally unintentional, with willful misconduct, which requires a specific intent. An adoption of this view would be an adoption of essen-

---

4. In *Myers,* a truck driver was discharged after he was involved in three separate motor vehicle accidents within a six month period. The Supreme Court held that despite the fact that the claimant was involved in the accidents, his conduct did not evidence an intentional disregard for his duties or the employer's interest; it merely established that the claimant was not a good truck driver. Therefore, the Court concluded that the claimant's conduct did not constitute willful misconduct and the matter was remanded for a calculation of benefits. 533 Pa. at 379, 625 A.2d at 625–26.

5. Claimant testified that although the police were summoned to the accident scene, he was not given a citation. (N.T. at 9).

6. This is evidenced by the Board's findings of fact as well as the absence of any findings by the Board that Claimant willfully, intentionally or deliberately acted in a manner contrary to Employer's interest or his duties.

tially the same theory which was rejected by the Supreme Court in *Myers*.

Finally, the Board contends that even if Claimant only acted inadvertently, his actions still constitute willful misconduct because he is an EMT and, therefore, held to a higher standard of care. In support of this argument, the Board relies on *United Refining Co. v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa.Cmwlth.), *alloc. denied*, 543 Pa. 721, 672 A.2d 312 (1995), wherein this Court recognized an exception to the general rule that inadvertent, non-intentional violations of an employer's work rules will not constitute willful misconduct where the "employee's conduct could jeopardize an employer's effective operations or place the public at risk." *Id.* at 522–23. There, the claimant was discharged from his employment after he failed to follow his employer's operating procedures and caused thousands of gallons of oil to spill into the employer's waste water treatment system. This Court denied benefits pursuant to Section 402(e) on the basis that the claimant's conduct in causing the oil spill potentially jeopardized his employer's essential operations and placed the public at risk.

After consideration of the facts of the instant case, we conclude that *United Refining* is not controlling. First, in the cases in which the above exception has been applied, the conduct at issue, whether inadvertent or negligent, usually has involved a work rule violation. *See e.g., Holly v. Unemployment Compensation Board of Review*, 151 Pa. Cmwlth. 450, 617 A.2d 80 (1992), *alloc. denied*, 534 Pa. 643, 626 A.2d 1160 (1993); *Myers v. Unemployment Compensation Board of Review*, 88 Pa.Cmwlth. 399, 490 A.2d 18 (1985); *Philadelphia Geriatric Center v. Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 357, 406 A.2d 1177

(1979).[7] The instant case does not involve a violation of any of Employer's work rules. Second, the exception is applied on a case by case basis, considering all of the circumstances. Here, the evidence reveals that the only reason the accident occurred was because Claimant *mistakenly* believed that the other driver had a stop sign. Unlike *United Refining*, there is no evidence that Claimant had been disciplined in the past for similar conduct, that Claimant's conduct was in violation of a known work rule or that Claimant's conduct caused Employer to sustain costly damages or resulted in personal injuries to himself, his passenger/partner or the other driver. Thus, *United Refining* does not command the denial of benefits.

Accordingly, based upon the circumstances of the instant case, we conclude as a matter of law that Claimant's inadvertent conduct does not constitute willful misconduct. The order of the Board is reversed.[8]

## ORDER

**AND NOW**, this 10th day of April, 1997, the order of the Unemployment Compensation Board of Review in the above captioned matter is reversed.

SILVESTRI, Senior Judge, dissents.

---

7. Our research did reveal one case, however, where an employee was held to a higher standard of care due to his position as a police officer and, therefore, his conduct, although not in violation of a work rule, was held to constitute willful misconduct, precluding the employee's receipt of benefits following his discharge. *See Lower Gwynedd Township v. Unemployment Compensation Board of Review*, 44 Pa.Cmwlth. 646, 404 A.2d 770 (1979). In *Lower Gwynedd Township*, however, the police officer threatened to

refuse to back up or assist another officer when in need of assistance. That conduct, however, is clearly not inadvertent or unintentional and, therefore, *Lower Gwynedd Township* is distinguishable from the matter before us.

8. Because of our resolution of the first issue raised by Claimant, it is unnecessary for us to address the remaining issues raised in his appeal.