## Vega Appeal.

Argued October 3, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Edward V. Sciamanna*, with him *Thomas L. Anderson*, for appellant.

*Frederic G. Weir*, with him *Richard DiSalle*, *Adolph L. Zeman, Robert L. Zeman, William S. Livengood, Jr.*, and *Zeman & Zeman*, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 14, 1955:

The question concerns the propriety of the dismissal from office of Henry Vega, a Chief of Police in the Borough of Burgettstown, Washington County, by the Council of the Borough under the provisions of the Act of June 15, 1951, P. L. 586, regulating police tenure in boroughs and other designated municipalities having a police force of less than three members.

Vega became a policeman in 1947, and Chief in 1950 of a police force in the Borough consisting of himself

and one other officer. In February, 1954, the Burgess and Police Committee of the Council filed a report recommending his discharge for neglect of official duty, violation of certain laws of the Commonwealth, and neglect, disobedience of orders, inefficiency, and conduct unbecoming an officer. A hearing was had by the Council, at the conclusion of which, on February 15, 1954, it entered an order removing him from office. On April 15, 1954, he filed an appeal in the Court of Common Pleas. At the hearing there held neither party presented additional testimony, and the trial judge, on the basis of the record before the Council, sustained Vega's appeal on the major charges against him, but, in lieu of removal, suspended him for 60 days without pay for infractions of certain rules and regulations. The exceptions of the Borough were overruled by the court en banc and it now appeals to this court.

The Act of 1951 provides that the dismissed police officer should have the right to appeal to the Court of Common Pleas of the County in which he was employed, but, unlike the Act of June 5, 1941, P. L. 84, which regulates police tenure in boroughs and other designated municipalities maintaining a police force of not less than three members, there are no explanatory provisions therein prescribing the time in which such an appeal must be taken, the scope of the appeal, the procedure therein, or the extent of the power of the court to modify the order of the Borough Council instead of merely affirming or reversing it. The 1941 Act does make provision in all such respects; it states that the appeal shall be taken within 60 days from the entry of the order appealed from, that the court shall hear the appeal on the original record and such additional proof or testimony as the appellant may desire to offer, that the case shall be determined "as the court deems proper," and that the "employee shall be sus-

pended, discharged, demoted or reinstated in accordance with the order of the court."[1]

The Act of 1951 is silent as to any right of the dismissed officer to appeal from the court below to this court. Under such circumstances however a review by certiorari may be had "in the broadest sense," and we may consider the record, including the testimony, to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made: *Kaufman Construction Co. v. Holcomb,* 357 Pa. 514, 518, 519, 55 A. 2d 534, 536.

The first question raised by appellant is in regard to the timeliness of the appeal to the Court of Common Pleas, to wit, 59 days after Vega was removed by the Borough Council. In the absence of any specific provision on the subject in the Act of 1951 it cannot be said that a time less than 60 days is unreasonable in which to file such an appeal, especially in view of the fact that the Act of 1941 allows such a period.

The next question is as to the scope and procedure of the appeal in the Common Pleas Court. It is the Borough's contention that the court was limited to deciding whether or not the Council had abused its discretion in ordering the dismissal, and that it did not have the right, as claimed by the appellant there, to hear the case de novo. Strictly speaking, it is not necessary to decide this mooted question because no additional testimony was in fact presented to the court, its decision being made solely on the basis of the record before the Council; moreover the court stated that, in

---

[1] The Act of 1941 was repealed, insofar as it relates to boroughs, by the Borough Code of July 10, 1947, P. L. 1621, but the above-cited provisions regulating the appeal to the Court of Common Pleas were reenacted therein, and there was added a right both of the Council and the dismissed officer to appeal to the Superior or the Supreme Court in the manner provided by law.

its opinion, the order of the Council did constitute an abuse of its discretion. However, in view of the procedure outlined in the Act of 1941 which expresses the intent of the legislature in substantially similar proceedings, we are of opinion that the Court of Common Pleas on such an appeal may take additional testimony and find for itself the facts necessary to a just determination of the controversy. And, for the same reason, it would seem that the Court of Common Pleas should have the same power under the 1951 statute as that given it by the Act of 1941 to determine the case "as the court deems proper," and to make its own order concerning the suspension, discharge, demotion or reinstatement of the officer.

Coming now to the evidence upon which the court below acted, there were two major charges preferred against Vega, one, that on an evening in January, 1950, he offered to take a woman acquaintance to her home in his car, but, instead of doing that, he drove her around for a couple of hours and made improper advances to her; the other charge, that on an occasion when he attended, in an official capacity and at the expense of the borough, a three-day convention of Chiefs of Police at Reading, a hotel registry there showed the names of "Mr. and Mrs. Henry Vega" although his wife had not accompanied him there.

If either of these charges had been satisfactorily proved it would surely have been sufficient to justify Vega's dismissal for conduct unbecoming an officer, but evidence to warrant the imposition of such a penalty ought to be clear and convincing. The Borough Council made no findings of fact. The incident narrated by the woman involved in the first charge had occurred four years before and she never reported it to anyone except that, as she claimed, she mentioned it some time later to Vega's mother-in-law; she had

volunteered the information concerning it to the Burgess only the evening before the hearing was held by the Borough Council. The court below held that her testimony was inadmissible for reasons that may be open to question, but, in view of the fact that the charge cannot be said to have been reasonably established, and that the length of time that had elapsed since its alleged occurrence materially weakened its effect as bearing upon Vega's present incompetency to continue in his office, the court was not unjustified in eliminating the charge from consideration. Much the same criticism may be made in regard to the registration in the Reading hotel. It is true that the Burgess stated that he saw Vega's wife in Burgettstown during the period when Vega was at the convention, but this fell short of establishing that she was never with her husband at any time while he was there, nor did anybody testify to seeing any other woman with him at the hotel. It is also true that there was some vague testimony, rather in the nature of rumor or gossip, that Vega was "meeting" this suspected "other woman" in a parking lot on Sundays, but, even so, there was no intimation of any improper conduct. In short, the court below cannot be said to have erred in holding that, as far as these charges were concerned, the dismissal of Vega was unwarranted.[2]

Apart from the matters thus discussed, the other complaints against Vega as to which testimony was

---

[2] While Vega was not obliged to testify at the hearing before the Council in refutation of the charges made against him, we recognize that, as stated in *Souder v. Philadelphia*, 305 Pa. 1, 6, 156 A. 245, 247, he should have been keen to see that no taint of evil-doing attached itself to him and that, when charges were made reflecting upon his official and moral conduct he should, if consistent with the truth, have met them with denial and thus held himself above suspicion.

presented at the hearing before the Borough Council were all apparently of a minor nature, being, most of them, infractions of some of the rules and regulations pertaining to police duties which had been proposed by the Burgess and adopted by the Council the year before. In disposing of them the court stated that, while not condoning any violations by Vega of the orders of the Burgess, nor overlooking the respect and obedience due from him to his superior, they did not believe that the offenses amounted to such negligence or violation of his official duties as to justify his dismissal, but rather that they called merely for some disciplinary action to guarantee his observance of such rules and regulations in the future. Therefore they concluded that a suspension of 60 days without pay was a proper order to make and that such a suspension would be sufficient to serve the purpose intended especially in view of the fact that Vega had been a policeman in the borough for seven years, four of them as Chief, and that admittedly he possessed the qualifications and the ability to make a good police officer. As already stated, we are of opinion that the court below had the power thus to modify the order of the Borough Council.

The order of the court below is affirmed; costs to be paid by appellee.